**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Carlos Michel Morales-Vasquez,

Defendant.

No. CR-25-01483-001-PHX-GMS

**ORDER**

Pending before the Court are Defendant Carlos Moralez-Vasquez's Motions to Dismiss the Indictment Pursuant to 8 U.S.C. § 1326(d) (Docs. 55, 56). For the reasons stated below, the motions are denied.

## BACKGROUND

### I.    Defendant's Immigration & Criminal History

Though it is unclear when Defendant first arrived in the United States, Defendant was first found deportable in January 2009 after he was convicted of a misdemeanor for burglary and sentenced to thirty days in jail with three years of probation. (Doc. 60-1 at 2-4; Doc. 60-10 at 3). Defendant was granted a voluntary return to Mexico, admitting that he was present in the United States illegally and stating that he would not face harm in Mexico upon returning there. (Doc. 60-1 at 2). He made no claim to United States citizenship. (*Id.* at 4). He later violated this probation and was sentenced to an additional forty-four days in prison. (*Id.* at 3).

On January 15, 2010, Defendant reentered the United States at the San Ysidro, California Port of Entry.  (Doc. 60-2 at 2; Doc. 60-4 at 3).  A few months later, in March 2010, Defendant was arrested twice, and in April 2010, was convicted of Grand Theft and of False Imprisonment, with each conviction carrying a two-year prison sentence.  (Doc. 60 at 2; Doc. 60-10 at 3).

## II.    February 24, 2011 Administrative Removal Proceedings

Following these convictions, on February 24, 2011, the United States Department of Homeland Security ("DHS") initiated expedited administrative removal proceedings against Defendant.  (Doc. 60-2 at 2-4).  As part of those proceedings, DHS completed a Form I-851, in which it alleged that Defendant was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an aggravated felon in reliance on his False Imprisonment conviction.  (*Id.*).  After the form was explained to Defendant in Spanish, he signed it, acknowledging his receipt of it; indicating that he admitted its allegations, that he was "deportable" and "not eligible for any form of relief from removal"; and waiving any right "to rebut and contest the" charges against him, including his "right to file a petition for review of the final removal order."  (*Id.* at 3).

Via Form I-294, DHS informed Defendant that he was "prohibited from entering, attempting to enter, or being in the United States," "at any time" because of his status as an aggravated felon.  (Doc. 55-1 at 4; Doc. 60-3 at 2).  He requested removal to Mexico, waived the fourteen-day period generally provided for appeals following the entry of a final administrative removal order ("ARO"), and was accordingly removed to Mexico that same day through the San Ysidro Port of Entry.  (Doc. 56-2 at 3; Doc. 60-2 at 3-4; Doc. 60-5 at 2-3).

## III.    March 26, 2011 Expedited Removal Proceeding

On March 26, 2011, DHS initiated expedited removal proceedings against Defendant after he applied for admission through the pedestrian lanes of the San Ysidro Port of Entry, without any valid entry documents while claiming to be a United States citizen.  (Doc. 60-5 at 3; Doc. 60-6 at 2; Doc. 60-7 at 3).  Upon secondary inspection,

officers "discovered that [Defendant] was in fact" making an official false claim of citizenship and that he was not a United States Citizen.  (Doc. 60-5 at 3).  Defendant then "freely and voluntarily admitted to his true name."  (*Id.*).

During "an oral interview and sworn statement" conducted in Spanish, Defendant stated that his "purpose for attempting to enter the United States" was to "go back home" to California "[t]o reunite with [his] family."  (Doc. 60-7 at 3-4).  He admitted that he had been previously removed from the country and that he knew his removal was "for life." (*Id.* at 3).  He signed this statement, affirming that it was "true and correct to the best of [his] knowledge."  (*Id.* at 4).  Indeed, Defendant concedes that "he made the false claim [and] that he knew it was false."  (Doc. 56 at 14).

Subsequently, DHS found that Defendant was "inadmissible to the United States" under 8 U.S.C. § 1182(a)(6)(C)(ii), (a)(7)(A)(i) because he was not a citizen of the United States despite "making an oral false claim to being" one, was a citizen and national of Mexico, had "willfully misrepresented" his "true identity," and was "not in possession of a" valid entry document.  (Doc. 60-5 at 3; Doc. 60-6 at 2, 4; Doc. 60-7 at 2-4).  He was accordingly ordered removed from the United States through Form I-860.  (Doc. 60-6 at 2).

Defendant's Form I-296—Notice to Alien Ordered Removed/Departure Verification—stated that he was "prohibited from entering, attempting to enter, or being in the United States . . . at any time because in addition to having been found inadmissible," he had "been convicted of a crime designated as an aggravated felony."  (Doc. 60-8 at 2). He was again "summarily removed from the United States for life" via the San Ysidro Port of Entry.  (*Id.*; Doc. 56-2 at 3; Doc. 60-5 at 3).

### IV.    2025 Reentry of Removed Alien Charge

On September 29, 2022, Defendant was found in Parker, La Paz County, Arizona. (Doc. 15 at 1; Doc. 60 at 3).  On September 30, 2022, Arizona law enforcement determined that Defendant "was a removed alien," and filled out a Form I-213—Record of Inadmissible Alien.  (Doc. 60 at 3; Doc. 60-9 at 2).

On October 28, 2025, Defendant was indicted for one count of Reentry of Removed Alien under 8 U.S.C. § 1326(a), enhanced by (b)(1), for being found in the United States "after having been previously denied admission, excluded, deported, and removed from the United States at or near San Ysidro, California, on or about March 26, 2011," when his expedited removal order ("ERO") was issued.  (Doc. 15 at 1; Doc. 60 at 3).  At his arraignment, Defendant pled not guilty.  (Doc. 23).

During the Final Pretrial Conference, held on May 18, 2026, counsel for the Government and counsel for Defendant presented oral argument on these motions.  (Doc. 72).

## DISCUSSION

Defendant has since filed two Motions to Dismiss the indictment against him, challenging the ERO which underlies his illegal reentry charge through two collateral attacks.  (Docs. 55, 56).

### I.    Legal Standards

Under 8 U.S.C. § 1326(d), a defendant charged with illegal reentry after removal may collaterally attack the predicate removal order.  But they may not do so unless they "demonstrate[] that—(1) [they] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [them] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  *Id.*; *United States v. Palomar-Santiago*, 593 U.S. 321, 324-25 (2021).  Defendants must "meet all three" conditions to challenge their underlying removal orders.  *Palomar-Santiago*, 593 U.S. at 326.  "Indeed, the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies . . . or was deprived of the opportunity for judicial review."  *Id.* at 327.

In the context of expedited removals, the first two collateral attack requirements are generally satisfied because neither administrative exhaustion nor judicial review are available to an alien removed through such proceedings.  *United States v. Gambino-Ruiz*,

91 F.4th 981, 985 (9th Cir. 2024). Defendants seeking to challenge the validity of their EROs therefore need only demonstrate that the order was fundamentally unfair. *Id.* A defendant can establish that a removal order was "fundamentally unfair" by showing that (1) the defendant's "due process rights were violated by defects in the underlying deportation proceeding," and that (2) the defendant "suffered prejudice as a result." *Id.* (quoting *United States v. Ortiz-Lopez*, 385 F.3d 1201, 1204 (9th Cir. 2004)). To show that the due process defects caused prejudice "the defendant must show that it was 'plausible' that he would have received some form of relief from removal." *United States v. Gomez*, 757 F.3d 885, 899 (9th Cir. 2014); *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000) (holding that the defendant "must demonstrate plausible grounds for relief from deportation").

Finally, if a defendant has been repeatedly removed from the United States under multiple removal orders, the validity of prior orders may impact the validity of subsequent orders—particularly "reinstatements." *United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010), *abrogated on other grounds as recognized by United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023). The reinstatement statute allows DHS to reinstate a prior order of removal "from its original date" without reopening the prior order or subjecting it to review if the "alien has reentered the United States illegally after having been removed . . . under an order of removal." 8 U.S.C. § 1231(a)(5). In such cases, "the alien is not eligible and may not apply for any relief." *Id.* If DHS reinstates a defendant's original removal order, and that original order is invalidated through collateral attack, neither the original order nor the reinstatement can be considered valid. *See, e.g.*, *Arias-Ordonez*, 597 F.3d at 978. In other words, "a successful collateral attack on a removal order precludes reliance on a reinstatement of that same order in criminal proceedings for illegal reentry." *United States v. Nunez*, 140 F.4th 1157, 1162 (9th Cir. 2025) (quoting *Arias-Ordonez*, 597 F.3d at 982).

- 5 -

## II.     Analysis

Defendant's challenges to the ERO rely on two key issues: (1) whether the ERO is a mere reinstatement of the ARO, which he alleges relied on an erroneous determination that he was an aggravated felon (Doc. 55), and (2) whether the ERO relies on an erroneous application of the false citizenship claims statute (Doc. 56).  As discussed below, Defendant's first challenge fails because (a) the ERO is not a reinstatement of the ARO and (b) any assumed invalidity in the ARO did not prejudice Defendant.  His second challenge similarly fails because he has not shown that any alleged error in the ERO was prejudicial.

### A.     ERO as Reinstatement of ARO

Even assuming that the ARO's aggravated felon determination was made in error, the ERO does not reinstate the ARO and any reliance on the ARO did not prejudice Defendant.

First, the ERO has independent legal effect from the ARO and cannot be invalidated as a reinstatement.  "A 'reinstatement' is an administrative procedure through which immigration officials can rely on a prior removal order to effect an alien's departure from the country, bypassing the procedural requirements, and protections, of a regular removal proceeding." *Arias-Ordonez*, 597 F.3d at 978.  Expedited removal proceedings are a distinct procedure, triggered by certain conditions of an alien's application for admission. 8 U.S.C. § 1225(b)(1)(A)(i).

"An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission."  8 U.S.C. § 1225(a)(1).  "If an immigration officer determines that an "applicant for admission" is "inadmissible," the officer will "order the alien removed from the United States without further hearing or review" through expedited removal proceedings unless the alien expresses an intent to apply for asylum or a fear of persecution. *Id.* § 1225(b)(1)(A)(i). As relevant here, an applicant is considered inadmissible if they "falsely represent" themselves "to be a citizen of the United States for any purpose or benefit" of any "Federal or State law." *Id.* § 1182(a)(6)(C)(ii)(I).  Similarly, an applicant is considered inadmissible if, at

- 6 -

the time of application, they do not possess valid entry documents. *Id.* § 1182(a)(7)(A)(i). The applicant bears the "burden of proof . . . to establish that" they are "not inadmissible." *Id.* § 1361. If the applicant does not do so, they must be removed from the United States through expedited removal procedures. *Id.* § 1225(b)(1)(A)(i); *Dep't of Homeland Sec. v. Thurasissigiam*, 591 U.S. 103, 109 (2020).

In this case, though the Form I-296 from Defendant's expedited removal proceedings incorporate the finding that he had "been convicted of a crime designated as an aggravated felony," it states that this finding is "in addition" to his "having been found inadmissible." (Doc. 60-8). Form I-860—Notice and Order of Expedited Removal—bases Defendant's ERO on his inadmissibility due to his false claim of United States citizenship and his lack of valid entry documents at the time of his application for admission under 8 U.S.C. § 1182(a)(6)(C)(ii), (a)(7)(A)(i). (Doc. 60-6 at 2, 4). Because the ERO is not a reinstatement of the ARO, any invalidity in the ARO does not automatically invalidate the ERO.

Second, Defendant argues that the ARO impacted the "legal consequences that make the" ERO "operative in this prosecution." (Doc. 55 at 13-14). Indeed, Defendant is correct that his Form I-296 incorporates the aggravated felony as a part of the justification for Defendant's lifetime ban from the United States. (Doc. 60-8 at 2). Nonetheless, Defendant has not demonstrated that this caused him any prejudice because he cannot show any plausible grounds for relief from deportation under the ERO. *Gomez*, 757 F.3d at 899. As noted above, the ERO provided grounds for removal independent of the ARO. Defendant himself notes that he is "not arguing that but for the defective" ARO "there would be no" ERO but nonetheless argues that the ARO's impact on the lifetime ban renders the ERO invalid. (Doc. 55 at 13-14).

In support of this argument, Defendant brings the Court's attention to the other potential legal consequences of the ERO which "gradually increase time of inadmissibility," ranging from a five- to twenty-year prohibition on "entering, attempting to enter, or being present in the United States." (*Id.*; Doc. 60-8 at 2); 8 U.S.C.

§ 1182(a)(9)(A).  While Defendant provides these other options, he makes no argument that his inadmissibility, past voluntary departure, and prior removal from the United States would not have triggered the twenty-year ban, which would have still been in place when he was found in the United States in September 2022.  (*See* Doc. 55 at 13-14); 8 U.S.C. § 1182(a)(9)(A) (applying a ban of twenty years to any alien ordered removed after a previous removal).  Defendant is therefore incorrect that the ERO would have "impose[d] a materially different legal regime" if not for the ARO's aggravated felony determination. (Doc. 55 at 14).

Thus, because Defendant does not argue that he would not have been removed from the United States in March 2011 or that there would have been any meaningful difference in the consequences of the ERO when Defendant was found in the United States in 2022, he has not alleged a plausible basis for relief from removal based on the ERO's incorporation of the ARO's aggravated felony finding.  Because Defendant has not fulfilled § 1326(d)'s requirements, the ERO is not subject to collateral attack on this basis and his first Motion to Dismiss (Doc. 55) is accordingly denied.

### B.    ERO

The crux of Defendant's second motion—as emphasized by his counsel in oral argument—is that the immigration officer who conducted Defendant's expedited removal proceedings did not make the requisite finding that Defendant made the false citizenship claim for "a purpose or benefit in accordance with" any Federal or State law.  *Ramírez Muñoz v. Garland*, 71 F.4th 1174, 1175 (9th Cir. 2023).  Given the context of Plaintiff's false claim of citizenship, this argument is without merit.

As noted above, an applicant is considered inadmissible if they "falsely represent" themselves "to be a citizen of the United States for any purpose or benefit" of any "Federal or State law." *Id.* § 1182(a)(6)(C)(ii)(I).  "Acting for 'any purpose or benefit under'" does not include "acting to evade the law's operation." *Ramírez Muñoz*, 71 F.4th at 1175.  For instance, a false claim of citizenship made by an alien present in the United States for the

purpose of avoiding removal, acts to evade the law or detection by law enforcement, not to seek any purpose or benefit under the law. *Id.* at 1177-78.

In contrast, when made at a port of entry in an application for admission, a false claim of citizenship "to a border official to obtain entry into the United States" is an act seeking a purpose or benefit under the law because entry to the United States is "a legal benefit." *Cf. id.* at 1180 (applying the same principle to an alien "who presents a fraudulent U.S. birth certificate to a border official"). While an alien making a false claim of citizenship at a port of entry may be attempting to evade inspection, they simultaneously seek the benefits that a United States citizen is entitled to during the admission process: "a United States citizen is not subject to the same scrutiny and requirements as an alien during the process of inspection and admission." *See In re Pinzon*, 26 I&N. Dec. 189, 191 (BIA 2013) (citing *Reid v. INS*, 420 U.S. 619, 24-25 (1975)); *In re Richmond*, 26 I&N Dec. 779, 788 (BIA 2016) ("We have similarly found it to be self-evident that an alien who makes a false claim to United States citizenship to DHS officers at a port of entry in order to gain admission to the United States has done so . . . to obtain the 'benefit' of entry").

Here, Plaintiff approached the San Ysidro port of entry just over a month after he was removed through that same port, knew he had a lifetime ban from United States under the ARO, admitted that he falsely represented himself as a United States Citizen, admitted that he knew the representation was false when he made it,   (Doc. 56 at 12, 14; Doc. 60-7 at 3). As an applicant for admission at the port of entry, making a false claim of citizenship to seek entry to the United States, Defendant sought a legal benefit in violation of § 1182(a)(6)(C)(ii)(I). Thus, Defendant's motion fails because he has not shown that his due process rights were violated and, as such, cannot show that the ERO was fundamentally unfair under *Palomar-Santiago*, 593 U.S. at 326.

Moreover, Defendant fails to plausibly allege that he would have received some form of relief from removal if not for the error. Defendant does not argue that he would have been able to show that he was not inadmissible even without the false citizenship claim determination. (*See* Doc. 56 at 10-15). In doing so, he fails to bear his burden to

establish non-inadmissibility upon application for admission. 8 U.S.C. § 1361; *Thurasissigiam*, 591 U.S. at 109. Indeed, Defendant's lack of valid entry documents also rendered him inadmissible and triggered expedited removal proceedings. 8 U.S.C. §§ 1182(a)(7)(A)(i), 1225(b)(1)(A)(i).

Defendant's asserted plausible basis for relief from removal is that he would have been permitted to withdraw his application for admission if not for the immigration officer's false citizenship claim determination. (Doc. 56 at 12-14). Under 8 U.S.C. § 1225(a)(4), "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." But, as the Government notes, this is a discretionary form of relief. (Doc. 60 at 13).

To establish prejudice, a defendant must show that it is plausible that the immigration officer would have used their discretion in the defendant's favor to give permission to withdraw. *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1090 (9th Cir. 2011). DHS's Inspector's Field Manual "guide[s] the immigration inspector's exercise of discretion" when evaluating whether to allow an alien to withdraw their application and thus provides a framework through which courts may assess the plausibility of such relief. *Id.* at 1090 & n.16. The Field Manual provides six factors for immigration officers to consider: "(1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations." *Id.* at 1090.

Here, the balance of these factors weighs heavily against any plausibility that Defendant would have been given permission to withdraw. First, as discussed above, Defendant admitted to falsely representing himself as a United States Citizen and that he knew the representation was false when he made it. (Doc. 56 at 14). He also admittedly had no valid entry documents. (*Id.* at 12). Second, as discussed above, Defendant had previously been found deportable and inadmissible. Because these facts would not allow

Defendant to easily overcome the grounds for inadmissibility, the fourth factor also weighs against Defendant.  *Barajas-Alvarado*, 655 F.3d at 1090.

The third factor also weighs against Defendant because an immigration officer would likely have determined that Defendant intended to break the law.[1]  An immigration officer would have likely seen Defendant's ARO—issued approximately one month earlier—which provided him notice of a lifetime ban as some evidence of intent to break the law.  The likelihood of this finding is further bolstered by Defendant's admission during his expedited removal proceedings that he knew he was already subject to a lifetime ban under the ARO.  (Doc. 60-7 at 3).  While Defendant claims that he "immediately admitted his identity and nationality" and "did not attempt to sustain any deception" (Doc. 56 at 12-13), this characterization is somewhat misleading.  He did not admit his lack of citizenship or his identity until after the immigration officers had already determined that he was in fact making a false citizenship claim.  (Doc. 60 at 11; Doc. 60-5 at 3).

Even further, the sixth factor's concern with the public interest decreases the plausibility that Defendant would have been allowed to withdraw.  As the Government highlights, Defendant had an existing misdemeanor burglary conviction, a felony false imprisonment conviction, and a felony grand theft conviction at the time of his application.  (Doc. 60 at 14).  Regardless of whether any of these criminal charges would qualify as aggravated felonies under federal law, an immigration officer would likely find that Defendant's criminal history counseled against allowing Defendant to withdraw his application.

In contrast, the fifth factor has little impact on the overall balance.  Other than asserting that he had limited cognitive ability, Defendant was twenty-one years old at the

---

[1] Though related, this determination is distinct from the Court's rejection of Defendant's argument that he did not have the requisite "purpose" in making a false citizenship claim. In that argument, Defendant avers that the false citizenship claim statute considers only whether "the false claim was made to comport with some specific legal requirement and to obtain a benefit authorized by or to achieve a purposes consistent with, the specific law at issue," and *not* on whether the "false claim [was] made merely to avoid adverse legal consequences."  (Doc. 56 at 6).  The intent inquiry undertaken here focuses generally on whether the alien intended to violate the law, without concern for the specific purpose or benefit of the alien's actions.

time of his application and makes no argument that he was in poor health. (Doc. 56 at 13; Doc. 55-4 at 2). While he claims that the immigration officer would have perceived his "recent history of trauma" as favorable to granting permission to withdraw, he provides no description of this trauma. (Doc. 56 at 13).

Thus, taken together, factors (1), (2), (3), (4), and (6) weigh heavily against Defendant's claim of plausible relief. Under the Field Manual, it is very unlikely that an immigration officer would have granted Defendant permission to withdraw his application. As the Government observes, "Defendant cannot show that it was 'plausible' that he would not have been removed on March 26, 2011" (Doc. 60 at 12) as required under § 1326(d)(3). *Gomez*, 757 F.3d at 899; *Garcia-Martinez*, 228 F.3d at 963. Because the ERO cannot be collaterally attacked on this basis, Defendant's second Motion to Dismiss (Doc. 56) is denied.

## CONCLUSION

Because Defendant fails to establish the requirements of § 1326(d) on either motion, he cannot collaterally attack the ERO as a predicate to his indictment for Reentry of Removed Alien. *Palomar-Santiago*, 593 U.S. at 326.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 55) and Motion to Dismiss Indictment (Doc. 56) are **DENIED**.

Dated this 19th day of May, 2026.

G. Murray Snow
Senior United States District Judge

- 12 -